# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON SIMONIAN, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:16-cv-00717-BAM <br><br> **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Jon Simonian ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On April 26, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income. AR 273-74, 278-85.[2] Plaintiff alleged that he became disabled due to post herpetic neuralgia, chronic pain, depression, bone loss in knee, shingles, arthritis, degenerative bone disease, loss of hand strength, fibromyalgia, chronic fatigue and anxiety. AR 298. Plaintiff's applications were denied initially and on reconsideration. AR 198-201, 203-06, 209-13, 215-19. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Daniel Healy held a hearing on September 30, 2014, and issued an order denying benefits on December 2, 2014. AR 17-33, 38-66. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 15-16. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on September 30, 2014, in Stockton, California. AR 38-66. Plaintiff appeared with his attorney Jeffrey Milam. AR 40-41. Impartial Vocational Expert ("VE") Kathleen McAlpine also appeared. AR 40.

In response to questioning by the ALJ, Plaintiff testified that his major physical problem is post herpetic neuralgia on the left side of his body, which causes constant pain and discomfort. He also has an impinged ligament in his left shoulder. Similarly, Plaintiff testified that the mental/emotional issues that stop him from working include memory loss, difficulty concentrating and difficulty sleeping. AR 43-45.

Plaintiff testified his medications also cause side effects, including fogginess, sleepiness, and memory loss. Additionally, Plaintiff reported that he smokes a pack of cigarettes each day and has been smoking for 10 years. He has not been diagnosed with any breathing problems related to

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

smoking, but his doctor has asked him to stop or cut down. He also uses medical marijuana. AR 46-47. Plaintiff also testified that he is on probation for the cultivation of marijuana, and had fulfilled two of the three years of that probation. AR 48-49.

When asked about a typical day, Plaintiff testified that he occasionally empties the dishwasher or does a load of laundry. Although he does not do any heavier cleaning, he can sometimes vacuum. He spends most of his day horizontal, resting because sitting or standing for any length of time becomes painful. He also drives, does some grocery shopping and will go to Black Oak Casino on occasion to see music. He likes to fish as a hobby, but very rarely. He also spends a couple hours each day on the computer. AR 49-52.

In response to questions from his attorney, Plaintiff testified that he has problems with his left side, but is right-handed. He has pain and swelling in both hands. He can use his left hand for thirty minutes at a time before he would need to rest for a couple of hours. In an eight-hour day, he could use his left hand for approximately two hours. He can use his right hand for fifteen minutes at a time and then would have to rest for a couple of hours. AR 53-55.

Plaintiff also testified that he has problems standing for long because of pain on his left side due to neuralgia. He also has constant left knee pain due to a small tear in the knee and degenerative bone disease. The longest he can stand at one time is thirty minutes. Plaintiff further testified that the most he can lift and carry is less than 10 pounds. His neuralgia and knee issues are worsening. AR 55-56.

When asked about his mental and emotional issues, Plaintiff testified they are worsening. He would have problems working at a consistent pace. He also would have difficulty performing activities within a set schedule and maintaining regular attendance. AR 58-59.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Kathleen McAlpine. AR 59. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, educational background and work history. This person could sit six hours; could stand and/or walk less than even two hours each; lift and/or carry less than 10 pounds even occasionally; never climb, balance, stoop, kneel, crouch, or crawl; would need numerous

unscheduled rest breaks; and could not maintain concentration for even simple, routine, repetitive tasks. The VE testified that there would not be any full-time jobs for this person. AR 60.

For the second hypothetical, the ALJ asked the VE to again assume a person of Plaintiff's age, education and work history. This person could work at jobs involving simple, routine, repetitive tasks; could sit, stand, walk six out of eight hours each with normal breaks; lift and/or carry 20 pounds occasionally, 10 pounds frequently; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; and could never work around hazards, like moving dangerous machinery, unprotected heights. The VE testified that this person could not perform Plaintiff's past jobs because they were medium to heavy, but there were other jobs for this person, such as janitor, cafeteria assistant and cashier. AR 60-62.

Following the ALJ's questioning, Plaintiff's counsel asked the VE to add to hypothetical two a person who would have difficulty performing activities within a schedule, maintaining regular attendance, being punctual to work, and handling any authority figure. This person also would be unstable emotionally, would not be able to complete a normal work day or work week without interruptions from psychologically based symptoms and would not be able to perform work at a consistent pace. The VE testified that the person would not be able to perform any jobs. AR 62-63.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 20-33. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 13, 2011, his alleged onset date. AR 23. Further, the ALJ identified depressive disorder, post hepatic neuralgia, chronic pain syndrome, and mild degenerative changes in bilateral hands as severe impairments. AR 23. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 23-25. Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work,

except he was limited to simple, routine, and repetitive tasks. He could sit/stand/walk six out of eight hours each, with normal breaks, could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could climb stairs or ramps occasionally, but could never climb ladders, ropes or scaffolds and could never work around hazards, such a moving dangerous machinery or unprotected heights. AR 25-31. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 31-32. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 32-33.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not free of legal error. Specifically, Plaintiff asserts that the ALJ erred by finding that Plaintiff retained the mental RFC to perform simple, repetitive work, which was predicated on the ALJ's improper rejection of the opinions of Drs. G. Savage and Gerardine Gauch. Plaintiff also asserts that the Appeals Council erred by failing to provide specific and legitimate reasons for rejecting the opinion of Dr. Robert L. Morgan regarding Plaintiff's mental limitations. Plaintiff additionally argues that the ALJ erred by finding that Plaintiff retained the physical RFC to perform light work predicated on the ALJ's improper rejection of his treating physician, Dr. Robert Reina. Finally, Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

### **I. Plaintiff's Mental RFC**

Plaintiff argues that the ALJ improperly determined that he could perform simple, repetitive work. In so doing, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of his treating psychologist, Dr. Savage, and the consultative examiner, Dr. Gauch. (ECF No. 11 at p. 19.) Plaintiff also asserts that the Appeals Council failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Morgan. (ECF No. 11 at p. 24.) For the reasons that follow, the Court finds that the ALJ's limitation of Plaintiff to simple, routine and repetitive tasks was not error.

///

///

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

## A. The ALJ Did Not Err in Discounting Dr. Savage's Opinion

Dr. Savage submitted an Assessment Summary with a last contact date of May 21, 2013. On mental status exam, Dr. Savage observed that Plaintiff was bright based on his verbal skills and educational background; he was self-confident and had some insight, but also had a history of poor judgment, fueled by poor impulse control and ongoing problems with authority. Dr. Savage further noted that Plaintiff had no psychotic symptoms, but his mood was labile, ranging from euthymic and upbeat to tearful, and his affect ranged from warm, happy and outgoing to dramatically distraught and depressed, while his thinking swung from somewhat objective to seeing himself as a victim. AR 459-50.

Following completion of the MMPI-2 test on March 20, 2012, Dr. Savage opined that Plaintiff's scores were indicative of a man "who experiences a significant amount of emotional turmoil, including depression, paranoia, anxiety and confused thinking." AR 460. Dr. Savage diagnosed Plaintiff with depressive disorder NOS, chronic pain disorder and personality disorder NOS—Cluster B, improving with age. Dr. Savage further opined that Plaintiff had no problems with memory, attention, concentration or comprehension, but had problems with judgment, planning and consideration of consequences. He also had difficulty with authority figures, which would make working for someone very difficult for him. Dr. Savage also opined that Plaintiff had difficulty performing activities within a schedule, maintaining regular attendance and punctuality. Although Plaintiff was very outgoing and sociable, Dr. Savage believed that this could make it difficult for him to work in coordination with or proximity to others without being distracted by them and distracting them. Plaintiff's work-related decisions also could be marred by personality factors, such as impulsivity, difficulty working with authority, and unstable emotions. Additionally, Dr. Savage opined that due to Plaintiff's medical problems, he would not be able to complete a normal workday or workweek without interruptions from psychologically based symptoms. He also would not be able to perform work at a consistent pace. Dr. Savage indicated that because Plaintiff was a high risk taker, having difficulty being aware of normal hazards or taking appropriate precautions, he would be likely to hurt himself on a job. Dr. Savage concluded that it was not likely that Plaintiff could compete or perform adequately in a normal work environment. AR 460-61.

7

In assessing the opinion of Dr. Savage, the ALJ reasoned as follows:

> The undersigned gives limited weigh[t] to Dr. Savage's opinion. While the undersigned agrees that the claimant's mental symptoms place some limitations on his ability to perform basic work activities, there is no evidence that he will be limited to the degree that Dr. Savage opines. The claimant['s] medical record consistently shows that he [is] pleasant and cooperative (Exhibits B1F, B3F, B6F, B7F). Dr. Savage himself noted that the claimant had no problems with memory, attention, concentration, or comprehension (Exhibit B4F). Based on these inconsistencies, along with limited mental status findings, the undersigned gives limited weight to Dr. Savage's opinion.

AR 30.[4] Plaintiff now argues that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Dr. Savage. The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Savage's opinion. The ALJ primarily rejected Dr. Savage's opinion of Plaintiff's functional limitations because such limitations were not supported by the objective medical record. AR 30. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"). Here, the ALJ first considered that the medical record consistently noted that Plaintiff was pleasant and cooperative.

---

[4] The ALJ correspondingly gave great weight to the opinion of the consultative examiner, Dr. Gauch, and partial weight to the opinions of the nonexamining physicians. AR 29.

AR 30, 365 ("very pleasant"), 368 ("pleasant"), 433 ("pleasant and cooperative"), AR 471 ("pleasant"), AR 479 ("energetic and cooperative;" "attitude was pleasant").

Plaintiff contends that such notations in the record are not inconsistent with Dr. Savage's observation of Plaintiff as "pleasant, likeable, and engaging" and "very outgoing and sociable." AR 461. Plaintiff points out that Dr. Savage indicated that such sociability could "make it difficult for him to work in coordination with or proximity to others without being distracted by them, and, distracting them." AR 461. Plaintiff therefore asserts that any observations by other medical sources that Plaintiff was "pleasant, likeable, and engaging" do not contradict Dr. Savage's opinion. (ECF No. 11 at p. 21.)

Plaintiff overlooks, however, that the consultative examiner, who also described Plaintiff as pleasant and cooperative, found that Plaintiff had friends and his symptom severity of mood disorder was within the mild to moderate range. AR 480. Additionally, on mental status exam, the consultative examiner found Plaintiff's concentration, judgment and insight to be within normal limits. The consultative examiner also found that Plaintiff's ability to interact with coworkers was not impaired and his ability to accept instructions from a supervisor and respond appropriately was only mildly impaired. AR 481. When an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citations omitted).

In addition to considering record evidence of Plaintiff's demeanor and attitude, the ALJ also observed that the medical record contained limited mental status findings. AR 30. Indeed, in his decision, the ALJ noted that there were few mental status findings in the record and that most of those were consistently unremarkable. AR 27. For instance, the ALJ considered Plaintiff's psychiatric examination around his alleged onset date, which showed he was alert and oriented with no unusual anxiety or evidence of depression. AR 27, 417. The ALJ also considered records from 2011 indicating that on examination Plaintiff was alert and oriented and aberrant behaviors were absent; records from 2013 indicating that on examination Plaintiff was oriented to time, place, person and situation, had appropriate mood and affect and had normal insight and judgment; and records from 2014 indicating that on examination Plaintiff was oriented to time, place, person and situation and had appropriate mood and affect. AR 27, 370, 494, 498, 506.

Further, the ALJ determined that Dr. Savage's opinion was overly limited; noting that Dr. Savage himself indicated the claimant had no problems with memory, attention, concentration, or comprehension. AR 30. A contradiction between a treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). Here, Dr. Savage opined, for example, that Plaintiff would not be able to perform at a consistent pace or perform activities within a schedule, despite a contradictory finding that Plaintiff had "no problems" with his memory, attention, concentration or comprehension. AR 460, 461.

## B. The ALJ Did Not Err in Discounting Dr. Gauch's Opinion

Plaintiff next argues that the ALJ's mental RFC finding is contradicted, in part, by the opinion of the consultative examiner, Dr. Gauch.

On August 4, 2013, Dr. Gauch completed a consultative psychiatric evaluation. On mental status examination, Plaintiff was energetic, cooperative and pleasant, but exhibited and reported a somewhat low tolerance for frustration. AR 479. His stream of mental activity was within normal limits, his speech form was logical, coherent, and concise and his thought content was appropriate. *Id.* Plaintiff's mood was dysthymic and his affect was constricted. He reported that his sleep was difficult, indicating he had trouble getting to sleep and then had problems waking because of his medications. *Id.* With respect to intellectual functioning, Plaintiff was oriented and his functioning appeared to be within the above average range. He was able to recall 3/3 items immediately and 3/3 items spontaneously after several minutes. His fund of knowledge and information were consistent with his education level and socioeconomic/cultural background and he was able to perform simple mathematical calculations without difficulty. His concentration, abstract thinking, judgment and insight were within normal limits. AR 479-80.

Dr. Gauch diagnosed Plaintiff with mood disorder, NOS and polysubstance dependence, but opined that Plaintiff's symptom severity of mood disorder was within the mild to moderate range. AR 480. Dr. Gauch determined that Plaintiff was capable of managing his funds, his ability to understand and remember very short and simple instructions and detailed instructions was unimpaired, his ability to maintain concentration and attention was unimpaired, his ability to accept instructions from a

supervisor and respond appropriately was mildly impaired, his ability to sustain an ordinary routine without special supervision was mildly impaired, his ability to complete a normal workday and workweek without interruptions at a constant pace was moderately impaired, influenced primarily by mood disorder, his ability to interact with coworkers was not impaired, his ability to deal with the various changes in the work setting was not impaired, and the likelihood of Plaintiff emotionally deteriorating in the work environment was mildly impaired, influenced primarily by mood disorder. AR 481.

The ALJ gave "great weight" to Dr. Gauch's opinion, reasoning as follows:

> Dr. Gauch opined that the claimant was mildly impaired in his ability to accept instructions from a supervisor and respond appropriately. He is mildly impaired in his ability sustain an ordinary routine without special supervision. He is moderately impaired in his ability to complete a normal workday and workweek without interruptions at a constant pace. The likelihood of the claimant emotionally deteriorating in the work environment is mildly impaired. (Exhibit B7F). Dr. Gauch's opinion allowing the claimant to perform some work is given great weight because it is supported by the generally adequate mental function that the claimant exhibited at multiple examinations (Exhibits B7F, B3F). However, the opinion understates the claimant's ability to interact with supervisors. This portion of the opinion[] is contradicted by the generally adequate social functioning that the claimant exhibited at multiple mental evaluations (Exhibits B4F, B7F). This portion of the opinion[] is also inconsistent with the lack of evidence of psychiatric hospitalization even without psychotropic medications.

AR 29. Plaintiff asserts that the ALJ failed to give legally adequate reasons for partially rejecting the opinion of Dr. Gauch. The Court disagrees.

As with a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

Here, Plaintiff first argues that the ALJ's decision to give great weight to Dr. Gauch's opinion constituted error because it disregarded the positive clinical findings of Dr. Savage. (ECF No. 11 at p.

11

24.) However, as indicated above, the independent clinical findings of an examining physician constitute substantial evidence. *Orn*, 495 F.3d at 632.

Plaintiff next argues that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Gauch's opinion that Plaintiff was mildly impaired in his ability to accept instructions from a supervisor and respond appropriately. (ECF No. 11 at pp. 24-25.) As noted above, the ALJ found that this portion of Dr. Gauch's opinion understated Plaintiff's abilities because it was contradicted by the adequate social functioning Plaintiff exhibited at multiple mental evaluations. AR 29. An ALJ properly may discount an examining physician's opinion that is not supported by the medical record. *See*, *e.g.*, *Thomas v. Barnett*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, it that opinion is brief, conclusory and inadequately supported by clinical findings.").

Finally, Plaintiff argues that the ALJ gave no reason for rejecting Dr. Gauch's opinion that Plaintiff was moderately impaired in his ability to complete a normal workday or workweek without interruptions at a constant pace. (ECF No. 11 at p. 25.) However, contrary to Plaintiff's suggestion, the ALJ also found that Plaintiff had "moderate difficulties in concentration, persistence, or pace," which was consistent with Dr. Gauch's opinion. AR 24. To the extent Plaintiff argues that the ALJ further erred by failing to include this moderate limitation in both the RFC and hypothetical to the VE, this argument lacks support. In his decision, the ALJ indicated that he gave Plaintiff the benefit of doubt regarding his inability to sustain concentration and persistence and thereby limited him to "simple, routine and repetitive tasks." AR 28. The ALJ included this limitation in both the RFC (AR 25) and in his hypothetical to the VE (AR 60-62).

### C. The Appeals Council Did Not Commit Reversible Error Regarding Dr. Morgan's Opinion

Plaintiff contends that the opinion of Dr. Morgan, which was submitted to the Appeals Council, demonstrates that the ALJ's rejection of Dr. Savage's opinion was unsupported by substantial evidence. Plaintiff further argues that the Appeals Council erred by failing to accept or give legally adequate reasons for rejecting Dr. Morgan's opinion. (ECF No. 11 at pp. 23-24.)

On April 7, 2015, Dr. Robert L. Morgan, a clinical psychologist, completed a psychological evaluation of Plaintiff at the request of Plaintiff's counsel. AR 528, 529-38, 539-41. The opinion, which was completed after the ALJ's decision, was submitted to the Appeals Council for consideration. AR 5. As part of his evaluation, Dr. Morgan addressed the ALJ's decision, including the ALJ's assignment of great weight to the opinion of Dr. Gauch, along with the medical evidence of record from Dr. Savage. AR 531, 536.

Dr. Morgan completed a mental status examination, and indicated that Plaintiff was anxious, with mild psychomotor restlessness, and depressed, with a tearful mood and labile affect ranging from anger to irritability to tearfulness. AR 533. He was alert and fully oriented, and able to engage in simple addition and subtraction and somewhat more complex calculations. His thought processes were coherent and goal-directed, his estimated level of intelligence was above average and his abstract thinking was satisfactory. His insight was fair, but his judgment had been impaired historically with tenuous impulse control. AR 534.

Following a psychological assessment, Plaintiff presented with a score of 42 on the Beck Depression Inventory, which was suggestive of a severe depression. *Id.* Dr. Morgan indicated that Plaintiff reported a number of difficulties consistent with a significant depressive experience. Plaintiff admitted to feelings of sadness, loss of interest in normal activities, and loss of a sense of pleasure in things that were previously enjoyed. AR 535. Plaintiff also reported significant problems frequently associated with aspects of a manic episode. Dr. Morgan believed that Plaintiff's clinical picture was primarily characterized by irritability and others were likely to view him as impatient and hostile. Dr. Morgan indicated that Plaintiff's relationships with others were probably under stress due to his frustration with the inability or unwillingness of those around him to keep up with his plans and possibly unrealistic demands. AR 535-36.

Dr. Morgan diagnosed Plaintiff with bipolar I disorder, current episode depressed. Dr. Morgan opined that Plaintiff presented as meeting criteria 12.04, an affective disorder, "specifically a bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive episodes, and currently characterized by a depressive syndrome." AR 536. Dr. Morgan indicated that Plaintiff had a marked impairment in his ability to maintain his activities of

daily living, moderate impairment in his ability to maintain his social functioning, fair ability to maintain concentration, marked impairment in his persistence and pace, marked impairment in his ability to perform activities within a clear schedule, maintain regular attendance and be punctual within customary tolerances, marked impairment in his ability to complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace, and marked impairment in his ability to interact with co-workers and the public and withstand the stress of a routine work day and deal with various changes in the work setting. Dr. Morgan identified that Plaintiff had one episode of marked decompensation of extended duration, and believed that there was a high likelihood of Plaintiff's emotional deterioration in a work-like environment. AR 536-37. Dr. Morgan also believed that Plaintiff had been disabled since the time he initially applied for disability and his prognosis was poor. AR 537.

As indicated above, Dr. Morgan's opinion, which post-dates the ALJ's decision, was considered by the Appeals Council. AR 1-4, 5. However, the Appeals Council determined that the additional evidence did provide "a basis for changing the ALJ's decision," and denied review. AR 1-4. Plaintiff now argues that the Appeals Council erred by failing to provide specific and legitimate reasons for rejecting Dr. Morgan's opinion. Plaintiff's argument is not persuasive.

This Court "[does] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Further, the Appeals Council is not required to provide a "detailed rationale" or make any particularized evidentiary showing as to why it rejected a post-hearing opinion. *See Taylor v. Comm. of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011); *Warner v. Astrue*, 859 F.Supp.2d 1107, 1115 (C.D. Cal.2012) (noting under *Taylor*, the Appeals Council is excused from offering any explanation for rejecting post-hearing treating source opinions). If, however, the Appeals Council considers new evidence when determining whether to review an ALJ's decision, that evidence becomes part of the administrative record, and the district court must consider it when reviewing the Commissioner's final decision for substantial evidence. *Brewes*, 682 F.3d at 1163.

The Court has considered the new evidence, but finds that Dr. Morgan's evaluation relates to Plaintiff's condition on the date of the mental status examination and testing, which was after the time period adjudicated by the ALJ. There is nothing in Dr. Morgan's opinion indicating that his findings are retrospective in nature. Although Dr. Morgan opined that Plaintiff was "thought to have been disabled since the point in time that he initially applied for Disability," the issue of whether of Plaintiff was disabled is reserved specifically to the Commissioner, and a physician's opinion on this issue is not entitled to special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (noting that even treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance). Further, it appears from the record that Dr. Morgan's opinion, solicited by counsel, was written in an apparent attempt to assist Plaintiff in obtaining social security benefits, as it specifically included a review of the ALJ's decision, with particular emphasis on Dr. Savage's opinion. AR 530-31, 536. This, in conjunction with the timing of the report, undermines its credibility. *See*, *e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (Ninth Circuit rejected doctor's opinion letter that varied from his treatment notes and "was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits.").

## II. Physical RFC

Plaintiff next argues that the ALJ erred by finding Plaintiff retained the physical RFC to perform light work on a full-time basis. (ECF No. 11 at p. 26.) Specifically, Plaintiff contends that the ALJ's physical RFC was based on the improper rejection of the opinions of Plaintiff's treating physician, Dr. Reina, and asserts that the ALJ failed to give specific, legitimate reasons supported by substantial evidence for rejecting Dr. Reina's opinion. (*Id*. at pp. 26-27.) The Court disagrees.

On September 19, 2014, Dr. Reina completed a Questionnaire form. In that form, Dr. Reina indicated that the medical problems for which he had treated Plaintiff precluded Plaintiff from performing any full-time work at any exertional level, including the sedentary level. Dr. Reina identified Plaintiff's primary impairments as "PHN (post herpatic neuralgia) chronic HCV outbreaks, degenerative disk disease and chronic pain syndrome." Dr. Reina based his opinion on objective findings of chronic zoster disease and constant intractable pain. Dr. Reina opined that during an 8-

hour work day, Plaintiff must periodically alternate sitting and standing every 2 hours.  Dr. Reina further opined that Plaintiff could not sit, stand or lift due to arthritis in both knees, hands, back, hips and shoulders.  AR 522.  Dr. Reina indicated that Plaintiff could lift less than 2 pounds frequently, and could reach/grasp for 2-3%, handle for 2-3%, push/pull for 1-3%, and perform fine finger manipulation 2-3% in an 8-hour workday.  AR 523.  At any one time, Plaintiff could perform those same activities for 30 minutes without resting his hands.  *Id.*

The ALJ gave this opinion "little weight," finding it was unsupported by the medical record as a whole.  AR 30.  As discussed above, an ALJ may properly discount a treating physician's opinion that is not supported by the medical record.  *Batson*, 359 F.3d at 1195 (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings").  Here, the ALJ found no evidence in the medical record regarding arthritis in Plaintiff's knees, and noted that Plaintiff's x-ray images were unremarkable.  AR 30, 380.  The ALJ also found no evidence of arthritis in Plaintiff's back, hips and shoulders, and acknowledged that Dr. Reina's treatment notes made no such findings.  AR 30, 380, 383-488-521.  A contradiction between a treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion.  *Valentine,* 574 F.3d at 692-93.  Additionally, the ALJ noted that that there were only mild degenerative changes in Plaintiff's hands, and Plaintiff performed a good many of his activities of daily living independently.  AR 30, 49-52, 447-52.  An ALJ properly may consider conflicts between a treating physician's opinion and a claimant's daily activities.  *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion).  The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting this opinion rendered by Dr. Reina in the Questionnaire form.

Dr. Reina also provided a letter on September 19, 2014, indicating that he had been Plaintiff's primary physician since September 2000.  Dr. Reina indicated that Plaintiff had a past history of

recurrent herpes zoster that progressed to Post Hepatic Neuralgia ("PHN"), and acute outbreaks had been treated with Valtex. Dr. Reina reported that Plaintiff's most pressing concern was his PHN with chronic left flank pain spreading occasionally to the upper chest. Plaintiff also had persistent shoulder pain degenerative in nature plus persistent knee pain degenerative plus a meniscal tear. Dr. Reina reported that Plaintiff required opiates for complete pain control for PHN, and had been referred to the University of California, San Francisco for pain and had been seen by a neurologist. Plaintiff had been on opiates and his pain level remained 6 out of 10. With respect to his chronic shoulder pain, Dr. Reina indicated that Plaintiff had minimal improvement with physical therapy, and due to significant pain had been put on multiple medications. He was being maintained on Elavil with minimal improvement. AR 524.

Dr. Reina reported that Plaintiff's current medical problems precluded him from full time work, and identified his primary diagnoses as: (1) PHN with intractable pain requiring chronic opiates; (2) recurrent HSV outbreaks; (3) severe degenerative joint disease of both shoulders with limitation of movement; and (4) recurrent knee pain secondary to degenerative joint disease as well as meniscal tear. AR 524-25. The objective findings included previous notes of a zoster outbreak, a MRI of the knee and therapy report of the shoulders. Dr. Reina opined that in an 8-hour work day, Plaintiff would have to alternate between sitting and standing every two hours. His standing and walking would be limited secondary to DJD and recurrent pain and stableness in his knee. Plaintiff's "[l]ifting would be severely limited due to the DJD of the shoulders with recurrent pain and markedly decreased range of motion of the bilateral shoulders in terms of the amount of weight he can lift frequently would currently be less than 10 pounds with 5 lbs. being the occasional lifting." AR 525. Dr. Reina also opined that "[r]epetitive motion with the upper extremities involving reaching, grasping, handling, pushing, pulling and fine finger manipulation would be limited by shoulders as well as his persistent left chest pain to less than 5%." *Id.* Dr. Reina concluded that Plaintiff was "medically disabled from performing full time duties." *Id.*

The ALJ gave "little weight" to Dr. Reina's letter, finding that there was little evidence in Plaintiff's medical record or Dr. Reina's treatment notes to support such drastic restrictions. AR 30. An ALJ may properly discount a treating physician's opinion that is not supported by the medical

17

record or by the physician's own treatment notes. *Batson*, 359 F.3d at 1195; *Valentine*, 574 F.3d at 692-93. Here, the ALJ properly noted that Dr. Reina's treatment notes included very limited physical examination findings. AR 30, 383-428, 488-521. The ALJ also properly noted that Plaintiff had near full range of motion and full strength during examinations. AR 27, 20, 365-67, 370, 524. The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting the letter opinion rendered by Dr. Reina.

### III. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective testimony. (ECF No. 11 at pp. 25-26.)

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.[5]

Here, the ALJ found that Plaintiff satisfied the first step of the analysis and made no finding of malingering. At the second step of the analysis, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . . " AR 28. Therefore, the ALJ's reasons for discounting the alleged severity of Plaintiff's symptoms must be specific, clear and convincing. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015).

---

[5] At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, was in effect and explained the factors to be considered in assessing credibility. In March 2016, that ruling was superseded by SSR 16-3p, 2016 WL 119029. The Ninth Circuit has not expressly ruled on whether SSR 16-3p applies retroactively, but has determined that SSR 16-3p "makes clear what [its] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness. *Trevizo v. Berryhill*, --- F.3d ---, 2017 WL 4053751, at *9 n. 5 (9th Cir. Sept. 14, 2017) (citing SSR 16-3p). In this instance, it is not necessary for the Court to determine whether SSR 16-3p applies retroactively as the outcome would be the same under either SSR 16-3p or SSR 96-7p.

Contrary to Plaintiff's suggestion, the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony regarding the limiting effects of his symptoms. First, the ALJ discounted Plaintiff's testimony based on his activities of daily living. AR 28. Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if the level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted); *see also Garrison*, 759 F.3d at 1016. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, however, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (internal citations and quotations omitted). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* Here, the ALJ appropriately considered that Plaintiff's activities, which included gardening, doing laundry, cooking, driving and grocery shopping, indicated that Plaintiff was not as limited as alleged. AR. 27.

Second, the ALJ discounted Plaintiff's testimony based on his "generally unpersuasive appearance and demeanor while testifying at the hearing." AR 28. An ALJ may rely on personal observations of the claimant at the administrative hearing when evaluating a plaintiff's testimony. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (ALJ properly relied in part on claimant's demeanor at hearing in discounting her testimony); *Drouin v. Sullivan*, 966 F.2d 1255, 1258–59 (9th Cir. 1992) (ALJ's personal observations at hearing one permissible factor taken into consideration in assessing claimant's allegations of severe, disabling pain); SSR 16-3p, 2016 WL 1119029 at *7 ("The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."); SSR 96-7p, 1996 WL 374186 at *5 ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").

Third, the ALJ indicated that Plaintiff's "medical record as a whole does not support his allegations of disabling impairments." AR 26. Although lack of medical evidence cannot form the sole basis for discounting a claimant's testimony, it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, for example, the ALJ considered record evidence that Plaintiff's complaints of frequent shingles outbreaks were significantly reduced by medication. AR 26, 369-72. The ALJ also considered the limited objective physical examination findings in Plaintiff's treatment records. AR 26, 383-428, 488-521. Additionally, the ALJ considered Plaintiff's complaints of bilateral knee pain, but noted that x-ray images of his knees were unremarkable. AR 26, 380. The ALJ further considered that Plaintiff's allegations of loss of hand strength as unsupported by x-rays showing only mild degenerative changes and physical examinations showing near full grip strength, good dexterity and good fingering abilities. AR 27, 452, 470, 524. With respect to Plaintiff's mental impairments, the ALJ noted that there were very few mental status findings in the record and most of those were consistently unremarkable. AR 27, 370, 492-99, 504-07.

Accordingly, the Court finds that the ALJ did not err in his assessment of Plaintiff's subjective complaints.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy Berryhill, Acting Commissioner of Social Security, and against Plaintiff Jon Simonian.

IT IS SO ORDERED.

Dated: **September 28, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE